# EXHIBIT A

| | |
|---|---|
| DISTRICT COURT, 19TH JUDICIAL DISTRICT, WELD COUNTY, STATE OF COLORADO<br>901 Ninth Avenue<br>Greeley, Colorado 80631<br>970-475-2400 | DATE FILED: March 24, 2020 2:22 PM<br>FILING ID: 57E4DE7FA7539<br>CASE NUMBER: 2020CV30246 |
| **Plaintiff**: **GREAT WESTERN DAIRY, LLC**, a Colorado limited liability company<br><br>v.<br><br>**Defendant**: **MWI VETERINARY SUPPLY CO.**, an Idaho corporation. | ▲ COURT USE ONLY ▲ |
| Daniel D. Williams, No. 38445<br>Colleen M. Koch, No. 51411<br>Hutchinson Black and Cook, LLC<br>921 Walnut Street, Suite 200<br>Boulder, CO 80302<br>(303) 442-6514<br>williams@hbcboulder.com<br>koch@hbcboulder.com<br>*Attorneys for Plaintiff* | Case Number:<br><br>Courtroom/Division: |
| **COMPLAINT** ||

Plaintiff Great Western Dairy, LLC ("Great Western"), for its Complaint against MWI Veterinary Supply Co. ("MWI"), states as follows:

## INTRODUCTION

1. MWI supplied a nutrient dispensing system to Great Western, to be used to dispense nutrients into feed for Great Western's dairy herd in precise amounts so as to promote the health of the herd. MWI was responsible for servicing and maintaining the system, and promised that if Great Western purchased MWI's nutrients, the system would work to an extreme degree of accuracy. But it did not work as promised. MWI's system, under the maintenance of MWI's technician, failed catastrophically and caused devastating Vitamin D poisoning to Great Western's dairy herd. Through this lawsuit, Great Western seeks compensation for the harm MWI has caused.

## PARTIES, JURISDICTION, AND VENUE

2. Plaintiff Great Western Dairy, LLC, a Colorado limited liability company, is a commercial dairy located in Ault, Colorado. In the Fall of 2018, Great Western has a dairy herd of approximately 11,000 animals, including 4,200 milking cows.

3. Defendant MWI Veterinary Supply Co. ("MWI") is an Idaho corporation registered to do business in the State of Colorado. It conducts business under the trade name MWI Animal Health. It is the successor-in-interest to a company formerly known as Micro Beef Technologies, Ltd.

4. Jurisdiction and venue are proper in this Court because: Defendant transacts business in this state; this lawsuit concerns services to be performed in Weld County; it concerns injuries suffered by Plaintiff in Weld County; Plaintiff is a resident of Weld County; and Defendant is not a resident of Colorado.

## GENERAL ALLEGATIONS

5. Commercial dairy production in the United States is an endeavor requiring precision, so as to produce milk for human consumption that is of the highest quality and in quantities sufficient for a dairy facility to be commercially viable. The operation of a modern dairy facility requires, among other things, monitoring the cows' intake of food and nutrients to optimize milk production. Commercial dairies supplement feed for their cows with specific quantities of nutrients based on recommendations from nutritionists trained in maintaining the health of the dairy cow herd.

6. In 2014, Becky Meyring, a sales representative for MWI, approached Great Western concerning Great Western buying a nutrient dispensing system. She provided a written proposal to Great Western dated June 2014 (the "Proposal").

7. The key terms of MWI's Proposal relevant to this lawsuit are as follows:

   a. MWI would install its "Micro Weigh Feed Additive System" (the "System") at Great Western's facility. The system would "accurately weigh[]" both dry and liquid feed additives "in half gram increments."

   b. MWI would "GUARANTEE" the System's performance.

   c. If Great Western purchases its nutrients through MWI for five years, MWI would pay the costs for the system.

   d. "All of the service and technical support is included, **[MWI's] policy is 24/7 365 days per year.**" (Emphasis in original.)

8. Casey DeHaan, on behalf of Great Western, accepted MWI's Proposal on June 15, 2014. A copy of the accepted Proposal is attached as **Exhibit 1**.

9. By agreement dated August 5, 2014, Great Western placed an order for the system to be installed at its facility (the "Order Agreement"). The Order Agreement is attached hereto as **Exhibit 2**.

10. The key terms of the Order Agreement relevant to this lawsuit are as follows:

   a. MWI agrees to supply the System to Great Western, along with all replacement

2

        parts;

    b. Great Western agrees to keep the hoppers in the System stocked with nutrients such that the system does not run out of nutrients;

    c. Great Western agrees to provide a clean and otherwise suitable location for the System, "but shall not be responsible for system maintenance or wear and tear";

    d. MWI agrees to waive charges for its "service" and "maintenance" of the System if MWI's nutrients are purchased for the System and/or nutrients of equivalent quality are used;

    e. MWI acknowledges the importance of the System operat[ing] accurately and dependably on every portion of the feed treated through the system, as well as the stringent quality control standards for the ingredients used; and

    f. MWI retains ownership in the System.

    11. Both the Proposal and the Order Agreement are in the name of Micro Beef Technologies, Ltd. However, as of the dates of these agreements, MWI was the successor-in-interest to Micro Beef Technologies, Ltd., and accordingly use of that name was a fictitious name actually referring to MWI.

## Use of the MWI System

    12. In the second half of 2014, Great Western began using the System to dispense all of the nutrients it added to its feed. It purchased its full nutrient supply from MWI. This included nutrients that were added in dry form, as well as nutrients added in liquid form.

    13. Pursuant to the parties' agreement, Great Western's nutritionist would determine the amount of nutrients to add for each cow. The nutrient instructions would then be relayed to MWI's technicians.

    14. MWI's technicians received the nutrient instructions, and from a remote location, programmed them into a computer on-site at Great Western. The on-site computer would then regulate the System – specifically how much of each nutrient was added to each batch of feed.

    15. As part of its obligations, MWI sent maintenance personnel to Great Western, approximately once per month, to service the System and to ensure that it was dispensing accurately and properly.

    16. MWI instructed Great Western that Great Western's sole responsibility with respect to operation of the System was to ensure that nutrients were loaded into the System's hoppers, so that there would be a constant supply of nutrients to dispense. Great Western performed that duty and did not allow the hoppers to empty fully.

## Service Problems

17. Beginning in at least 2017, Great Western noticed that the service it was receiving from MWI was slipping. Specifically, at this time, MWI's service personnel became less responsive when there were system malfunctions. Great Western observed that there were plugged lines and pumps, and that MSI service personnel otherwise did not appear to be leaving the equipment in a clean condition after their visits.

18. In light of this change in quality, Great Western proposed discontinuing use of MWI's System. In response, MWI sent high-level management to speak with Great Western's management on-site to try to salvage the relationship.

19. Based on MWI's representations that it was fully committed to providing the highest quality service and assuring that nutrients were dispensed properly, Great Western agreed to continue using the System for liquid nutrients, although at that time it discontinued the use of the system for dry nutrients.

## Vitamin D Overdosing of Great Western's Herd

20. By the beginning of 2018, Great Western was hopeful that the service concerns experienced in 2017 had resolved, and that MWI management's promise to provide top-quality service was being honored.

21. In November 2018, however, Great Western conducted a review of its purchases for nutrients. Through that review, it discovered that there had been a spike in the quantity of Vitamin D that it had been required to purchase from MWI to comply with MWI's instructions to keep the Vitamin D liquid hopper full.

22. For example, although the amount of Vitamin D to be added for milk cows was supposed to be in the range of approximately 16,000 IU/HD per day to 20,000 IU/HD per day, during the February 2018 to November 2018 timeframe, MWI's system was dispensing at least 220,000 to 280,000 IU/HD per day. Heifers had a lower dose but were also overfed.

23. Great Western immediately reported this to MWI. After review, MWI took responsibility for this error and confirmed that its System had been over-dispensing Vitamin D into Great Western's feed since approximately February 2018. Indeed, admitting fault for this over-dispensing, on November 19, 2018, MWI issued a credit to Great Western of $50,205.12, which was MWI's estimated cost of the excess Vitamin D that Great Western was forced to purchase from MWI in light of the System over-dispensing Vitamin D.

24. The refund for the cost of the excess Vitamin D was only the tip of the iceberg as to the damage caused by the Vitamin D poisoning of Great Western's herd. A non-exclusive list of the additional categories of damage caused by MWI is as follows:

    a. Increased incidence of morbidity and death of cattle;

    b. Increased incidence of milk-fever;

4

  c. Increased incidence of sub-clinical milk-fever;

  d. Milk production losses;

  e. Chronic effects of myocardial fibrosis;

  f. Out-of-pocket veterinary costs; and

  g. Other health events including lameness and reproduction problems.

25. By letter dated February 27, 2020, Great Western put MWI on notice of this claim.

## FIRST CLAIM FOR RELIEF
### (Negligence)

26. Great Western incorporates here by reference all of the preceding paragraphs.

27. Great Western suffered injuries when its herd was damaged by Vitamin D poisoning.

28. MWI's maintenance and operation of the System was done in a negligent manner.

29. MWI's maintenance and operation of the System was performed by MWI personnel in the course and scope of their duties for MWI.

30. Pursuant to the doctrine of *respondeat superior*, MWI is responsible for the conduct of its personnel with respect to maintenance and operation of the System.

31. MWI negligence, committed directly and/or through its employees, caused Great Western to suffer injuries and damage from the Vitamin D poisoning in amounts to be proven at trial.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

32. Great Western incorporates here by reference all of the preceding paragraphs.

33. Great Western and MWI were parties to a contract memorialized in the Proposal and the Order Agreement.

34. MWI breached the parties' contract by, *inter alia*,

  a. Failing to install a System that accurately weighed Vitamin D in half-gram increments;

  b. Installing a System that failed to operate reliably; and

  c. Failing to conduct needed maintenance on the System to keep it running properly.

35. Great Western performed all its duties under the contract.

36. MWI's breach of its duties caused damage to Great Western in amounts to be proved at trial.

## PRAYER FOR RELIEF

Great Western respectfully requests that this Court enter judgment in its favor and award the following relief:

A. Damages in an amount to be determined at trial;

B. Pre- and post-judgment interest,

C. Costs; and

D. Such other relief as is just and proper.

## JURY DEMAND

Plaintiff demands a jury on all claims.

Dated: March 24, 2020

                HUTCHINSON BLACK AND COOK, LLC

                By: *s/ Daniel D. Williams*
                     Daniel D. Williams
                     Colleen M. Koch

                     Attorney for Plaintiff

Plaintiff's Address:

39390 CR 39
Ault, Colorado 80610

Case 1:20-cv-01142-PAB Document 1-4 Filed 04/23/20 USDC Colorado Page 7 of 17

DATE FILED: March 24, 2020 2:22 PM
FILING ID: 57E4DE7FA7539
CASE NUMBER: 2020CV30246



# Technology Proposal
# Great Western Dairy LLC

**CONFIDENTIAL**

June 2014

CONFIDENTIAL    PROPOERTY OF MICRO    CONFIDENTIAL

Exhibit 1-1

June 2014

# Great Western Dairy LLC

Mr. Casey DeHaan,

I am writing this letter to say thanks for the time that you allowed us to detail our technologies. Based on our discussion, I have prepared a proposal with some options to consider for the Micro Weigh System and buildings for those placed at Great Western Dairy.

## MICRO WEIGH FEED ADDITIVE SYSTEM

- The Micro Beef Technologies, Inc. Micro Weigh Feed Additive System is the ONLY micro-ingredient automated delivery system that accurately weighs BOTH dry and liquid feed additives in half gram increments.
- Feed additives are weighed in a concave weigh hopper, which allows for a unique "NO LEAK" scale.
- The Micro Weigh System also has a written, dollar-backed "GUARANTEE" that states that Micro Technologies will never have to compromise your feed manufacturing quality standards by removing or failing to provide these fundamental Weigh System elements.

## MICRO WEIGH MACHINE BUILDING

Our proposed building would be a 15x25 insulated, temperature controlled steel building. Micro will work with the yard to determine the best location to supply a suitable building to house the Micro machines. The estimate for building material is **$6500.00** and Micro will provide the labor and materials for building construction. *The dairy is responsible for supplying 480 volt 3 phase power and water to the building as well as any concrete needed.*

| | |
|---|---|
| PRO CONTROL BATCHER | $35,615.00 |
| DHI – EZ Feed | $8,750.00 |

Micro will pay for ½ of DHI's EZ Feed program upon instillation. Great Western Dairy will pay the other ½. Upon signing an agreement for Cubex Inventory Management System and Animal Health usage, Micro will reimburse Great Western Dairy for the second ½ of EZ Feed in the amount of $8,750.00

| | |
|---|---|
| TOTAL INVESTMENT | $50,615.00 |

CONFIDENTIAL          PROPOERTY OF MICRO          CONFIDENTIAL

Exhibit 1-2

### Additional Options & Benefits:

Another option Micro will make available to Great Western Dairy is the opportunity to reduce your systems investment cost through a Confidential Amortization Agreement. The agreement simply states that Micro would be willing to stand the initial cost of one MWS building and Pro Control Batcher and ½ of EZ Feed feed management program in exchange for 100% of your Feed Additive products for a period of 5 years. If at any time during that period Great Western Dairy would wish to discontinue the agreement, simply notify Micro with 30-days written notice. At that time the un-amortized balance would be due in full. ~~Financing is available upon request to qualified individuals only.~~

### SUMMARY

As long as the 100% Feed Additive products are purchased through Micro there is no monthly license and support fee. There would also be an additional discount on your monthly statement of ½% if paid within 10 days of the invoice date. All of the service and technical support is included, Micro's policy is 24/7 365 days per year.

It is our pleasure to provide to you this proposal for Micro's systems. We at Micro feel that we have a distinct reputation of superior systems, superior service, and superior value, which impacts your bottom line to help you in achieving your business objectives of "least cost production". If I can provide you with any additional or supporting information, please don't hesitate to call me on my cell phone 970-584-9852.

*[handwritten: Micro agrees to inform Great Western Dairy of any price increases PRIOR to implementing. (BM)]*

Thank You,

*[signature: Becky Meyring]*
Becky Meyring
Program Development
Micro

Proposal Accepted

*[signature]* 6/16/14
Casey DeHaan    Date

CONFIDENTIAL    PROPOERTY OF MICRO    CONFIDENTIAL

Exhibit 1-3

## CONFIDENTIAL FEED ADDITIVE PRICES/ PER LB.

| FEED ADDITIVE | $ / POUND |
|---|---|
| Availa 4 | $2.40 |
| Vitamin A 100 Dry | $1.96 |
| Vitamin D 500 Liquid | $9.07 |
| Vitamin E 125 Dry | $4.84 |
| Rumensin 90.7 | $9.44 |
| EDDI 9.2% | $3.10 |
| Levucell SC | $28.35 |
| Kemtrace Chromium .4% | $8.75 |
| SelenoSource 3000 | $3.90 |
| Smartamine M | $7.90 |

**ALL PRICING SUBJECT TO MANUFACTURER PRICE INCREASES**

\*\*\*Micro offers a ½ % discount on feed additives paid within 10 days of invoice\*\*\*

CONFIDENTIAL     PROPOERTY OF MICRO     CONFIDENTIAL

Exhibit 1-4

## CONFIDENTIAL TECHNOLOGY AMORTIZATION AGREEMENT

This agreement made and effective this 13 day of June 2014, between **Micro Dairy Logic, a Division of Micro Beef Technologies, Ltd.**, a Texas Limited Partnership having it's principal place of business in Amarillo, Texas (hereafter called "MICRO"), and Great Western Dairy LLC having it's principal place of business in Ault, CO (hereafter called "USER").

1. Confidentiality: The terms of this agreement are made in strict confidence and the parties agree to maintain its terms and conditions in strict confidence.

2. Equipment: MICRO will provide and install the system described herein at no initial cost to USER and MICRO and USER agree that the costs detailed herein will be amortized over a 5 year period at 20% per year provided that USER meets the commitments in (3) below.

| EQUIPMENT SYSTEM | COST |
|---|---|
| Pro Control Batcher | $35,615.00 |
| Micro Weigh Machine Building | $ 6,500.00 |
| DHI EZ Feed Program | $ 8,750.00 |
|  | $ |
|  | $ |
|  | $ |
| TOTAL | $50,865.00 |

At any time during that 5-year period, should USER or MICRO terminate this agreement, USER agrees to pay the pro rata non-amortized balance of the initial costs listed herein.

Exhibit 1-5

3. <u>USER Commitments</u>: USER agrees for the time period of this agreement as follows:

A. Purchase all of its Feed Micro Ingredient needs for use through the Micro Ingredient Machine of MICRO.

~~B.~~ Purchase all of its Animal Health products and Animal Health supply needs for its operations from MICRO.

~~C.~~ Purchase all of its Sanitation Chemicals and Rubber Good products supply needs for its operations from MICRO.

D. Pay the license / support fees described in the applicable schedules attached hereto. USER agrees that MICRO has the right to modify the license / support schedules and will give USER 90 days advance notice of any such modification.

E. USER agrees to provide a positive referral to MICRO concerning its systems and service for MICRO to use for sales and promotion purposes once USER has had sufficient time to evaluate and use the systems and feels satisfied with performance.

4. <u>WARRANTY</u>: MICRO agrees to replace system computer hardware as long as such hardware is covered by the manufacturers' warranty. Otherwise USER will be responsible for system replacement. These warranties are in lieu of any other warranties expressed or implied, Including but not limited to any implied warranties of merchantability and/or fitness for a particular purpose.

MICRO DAIRY LOGIC
BY _____
PRINT NAME _____
TITLE _____
DATE _____

_Great Western Dairy_ (USER)
BY _[signature]_
PRINT NAME _Casey DeHaan_
TITLE _Partner_
DATE _6/16/14_

Exhibit 1-6

DATE FILED: March 24, 2020 2:22 PM
FILING ID: 57E4DE7FA7539
CASE NUMBER: 2020CV30246

8.5, 2014

Micro Dairy Logic
P.O. Box 9262
Amarillo, TX 79105

Gentlemen:

This is to confirm that I have discussed with your representatives, Becky Meyring the automated Micro Ingredient System and program offered by your company.

And further, we are ordering the installation of one of your Micro Weigh Systems® and it is our intention to utilize this system and program.

Company Great Western Dairy
Individual Cosey Dettson
Title Owner

This order will be complete when accepted by the proper authority at the office of Micro Dairy Logic in Amarillo, Texas.

Accepted By _G JOA_

Page 1 of 4

Micro Weigh System Acknowledgement
March 6, 2008

Exhibit 2-1

## ACKNOWLEDGEMENT

### TERMS AND CONDITIONS OF USE OF

### THE "MICRO" FEED MICRO INGREDIENT SYSTEM

A C K N O W L E D G M E N T noted this __5th__ day of __Aug__, 20__14__ between MICRO DAIRY LOGIC a division of MICRO BEEF TECHNOLOGIES, LTD hereinafter called MICRO and __Great Western Dairy__, hereinafter called the USER.

1. **General**: MICRO hereby provides to USER a FEED MICRO INGREDIENT SYSTEM, as well as any duplicate parts mechanisms and devices relating thereto or used in connection therewith, now attached to or delivered with said system, or which may at any time hereafter be obtained from MICRO, or added to the system by or with consent of MICRO.

2. **Operation**: The USER and MICRO acknowledge that the following rules, regulations and restrictions will govern the operation of the MICRO INGREDIENT SYSTEM.

    a. USER is responsible for all formulas programmed for use by the MICRO INGREDIENT SYSTEM in its micro ingredient delivery and treatment of feed.

    b. The USER agrees to establish and perform adequate quality and inventory control procedures to insure the proper application of ingredients delivered by the MICRO INGREDIENT SYSTEM to feed which it processes. The USER agrees to provide an environment for the system which will protect it from extreme variances in the elements such as rain, or snow, temperature changes, and other weathering effects, and the USER specifically agrees to provide and maintain (1) adequate water supply at the rate of 40 P.S.I., 15 gal. per minute, (2) proper enclosure for dust and moisture control with temperature control within a range of 35 to 120 degrees (3) adequate electrical power, together with suitable wiring.

    c. USER will maintain the environment and enclosure for the MICRO INGREDIENT SYSTEM in good condition with reasonable cleanliness at all times, but shall not be responsible for system maintenance or wear and tear. All conditions, attachments, accessories, and repairs at any time made to or placed upon the system shall become part of the system and shall be the property of MICRO.

    d. USER is not prohibited from using micro ingredients from others; however, USER recognizes that it is in the best interest of both USER and MICRO that the MICRO INGREDIENT SYSTEM operates accurately and dependably on every portion of feed treated by USER. USER also recognizes that certain stringent quality control standards exist for the physical and biological characteristics of feed micro ingredients utilized through the system. Such characteristics include potency, bulk density / flowability, hygroscopic nature, particle size, oil/dust content, physical / biological stability and viscosity.

    e. USER recognizes that no assurances can be given by MICRO regarding standards of MICRO INGREDIENT SYSTEM performance or proper delivery into the feed if ingredients are utilized that are not obtained from MICRO or which have not satisfied equivalent quality control standards with respect to the physical and biological characteristics described in paragraph d. above.

  f. Any irregularities or malfunctions of the MICRO INGREDIENT SYSTEM must be reported to MICRO within 12 hours of their occurrence.

  g. Any and all charges for parts, service, and maintenance are considered waived by MICRO if not charged to the USER within 60 days of being incurred. There will be no waiver of such charges if ingredients are used in the MICRO INGREDIENT SYSTEM that are not obtained from MICRO or which have not met equivalent quality control standards with respect to the physical and biological characteristics described in paragraph d. above.

  h. Physical damage Insurance: MICRO shall provide its own insurance coverage, if deemed necessary, for the potential loss of the MICRO INGREDIENT SYSTEM and attachments. USER shall provide coverage if deemed necessary, for all other facilities not specifically the ownership of MICRO.

3. **MICRO INDEMNITY**: The USER shall indemnify, protect, save and keep harmless MICRO, it's agents, servants, successors, and assigns from and against all losses, damages, injuries, claims, demands and expenses, including legal expenses, or whatsoever nature, arising out of the improper use, and or operation of the MICRO INGREDIENT SYSTEM or any systems or items or equipment attached thereon or appurtenant thereto, or the use of any non MICRO ingredients therein, while operated by USER.

4. **TERMINATION**: The use of the MICRO INGREDIENT SYSTEM under the guidelines of this agreement may be terminated by either party by giving the other party 30 days notice in writing.

5. **OWNERSHIP**: By acknowledging this agreement USER and its officers hereby recognize and agrees that USER has acquired no ownership in the MICRO INGREDIENT SYSTEM described herein and same remains and is the property of MICRO and any person, firm, or cooperation in privity with MICRO.

6. **BUILDING MAINTENANCE**: By acknowledging this agreement USER and its officers hereby recognizes that the insurance and maintenance of said building become the total responsibility of USER upon completion of the MICRO INGREDIENT SYSTEM.

_[signature]_   8/5/14
Signed     Date     Signed     Date

MICRO DAIRY LOGIC     USER
A DIVISION OF MICRO BEEF TECHNOLOGIES, LTD

Firm Name _Great Western Dairy, LLC_
Date _8/5/14_

Food and Drug Administration
Page 3 of 4     Micro Weigh System Acknowledgement
          March 6, 2008

Exhibit 2-3

ATTENTION:

Gentlemen:

We authorize Micro Dairy Logic to act as an agent on our behalf in matters relating to Medicated Feed Mill Licenses for the purpose of receiving approval to manufacture the medicated feeds contained therein. This Authorization includes, among other things, the right to prepare, make changes and file with the Food and Drug Administration, amendments and/or supplements to our Medicated Feed Mill Licenses. It is understood that the agent will notify us of submissions made on our behalf.

With respect to the Drug Master Formula Records, we authorize Micro Dairy Logic to prepare, check, date and sign or initial by a printed statement on the Micro Dairy Logic computer printout the following:

> THE ABOVE INGREDIENTS AND LEVELS HAVE BEEN REQUESTED BY
> THE CUSTOMER TO BE MADE AVAILABLE FOR SELECTIVE USE AND
> THIS RECORD OF THOSE LEVELS HAS BEEN PREPARED AND CHECKED
> BY MICRO DAIRY LOGIC.

In addition, we authorize representatives of Micro Dairy Logic to discuss with you any information relating to FDA Current Good Manufacturing Practice Regulations as they apply to our firm. We feel this will improve communication between your agency and our firm in dealing with these Requirements.

Yours truly,

Signature _[signature]_

Title _Member_

cc: Micro Dairy Logic
P.O. Box 9262
Amarillo, TX 79105

Exhibit 2-4